## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRP HOLD OX, LLC, and<br>TDBBS, LLC, | § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| v. | § <br> § | CIVIL ACTION |
| WILLIAM CHILIAN, | § <br> § | NO. _____ |
| Defendant. | § <br> § | |
| | § | JURY TRIAL DEMANDED |

---

## VERIFIED COMPLAINT

---

Plaintiffs BRP Hold Ox, LLC ("BRP") and TDBBS, LLC ("TDBBS") (collectively, "Plaintiffs") through their undersigned counsel, as and for their Verified Complaint against Defendant William Chilian ("Chilian"), upon knowledge as to Plaintiffs and their own acts and upon information and belief as to all other matters, allege as follows:

## I.
## INTRODUCTION

1.      Plaintiffs seek to obtain injunctive relief against, and recover damages from, TDBBS's former Member and Vice President of Marketing and Sales, Defendant Chilian.

2.      As detailed below, Chilian, a highly-paid Member and high-ranking executive of TDBBS, received **REDACTED** in connection with the sale to BRP of his ownership interest in TDBBS.

3.      In consideration of, among other things, that extraordinary payment, Chilian agreed specifically that he would not compete with TDBBS for a period of one year and, further, that he would protect and not use or disclose TDBBS's confidential and proprietary information.

4.      In direct violation of, among other things, those promises and agreements, Chilian secretly joined a direct competitor of TDBBS and has breached and is continuing to breach his contractual and common law duties owed to Plaintiffs.

5.      Absent injunctive relief, Plaintiffs will be irreparably harmed by Chilian's misconduct.

## II.
## PARTIES, VENUE AND JURISDICTION

6.      Plaintiff BRP is a Delaware limited liability company with a principal place of business in New York, New York.  BRP's sole Member is BRP Hold Nightingale, LLC, a Delaware limited liability company with a principal place of business in New York, New York.

7.      Plaintiff TDBBS is a Delaware limited liability company with a principal place of business in Henrico, Virginia.  TDBBS's sole Member is Plaintiff BRP.

8.      Defendant Chilian is a citizen and resident of New Jersey and does not maintain a registered agent for service of process in Delaware.  Upon information and belief, Chilian's address is 37 Carriage Hill Drive, Colts Neck, New Jersey 07722.

9.      Federal diversity jurisdiction exists pursuant to 28 U.S.C. §1332.  Plaintiffs are entities organized under the laws of Delaware, with their principal place of business in New York.  Defendant is a citizen of New Jersey.  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

10.      Venue is proper in this District pursuant to 28 U.S.C. §1391.

11.    Additionally, this Court has jurisdiction, and venue properly lies herein, because, among other bases, Plaintiffs and Chilian so agreed in the TDBBS Membership Interest Purchase Agreement dated March 3, 2017 (the "Agreement"), a true and accurate copy of which is attached hereto as Exhibit A.  See Exhibit ("Ex.") A, §11.10.2.

## II.
## FACTUAL BACKGROUND

### In Order to Sells His Membership Interest, Chilian Promises Not to Compete.

12.    TDBBS is a pet chew and treats business that specializes in formulating, sourcing, manufacturing, distributing, marketing, and selling natural pet treats and chews throughout the United States and abroad.

13.    TDBBS sources ingredients, globally, and sells its products online (both direct-to-consumer and through third-party platforms), through pet specialty retailers, and through mass market and club retailers.

14.    TDBBS's relationships with customers, distributors, suppliers and other vendors are critical to its success in the growing and competitive pet treat and chew segment of the pet food market.

15.    Until March 3, 2017, Chilian owned a Membership interest in TDBBS.

16.    On March 3, 2017, Chilian and TDBBS's other Members entered into the Agreement in order to sell all of their Membership ownership interests in TDBBS to BRP.

17.    Pursuant to the Agreement, BRP became the sole owner of all interests in TDBBS.

18.    Chilian received an immediate, lump sum payment of **REDACTED**, in exchange for his Membership interest in TDBBS.

3

19.     The Members of TDBBS, including Chilian, and BRP were represented by

counsel throughout the negotiation, preparation and execution of the Agreement.

20.     In order to induce BRP to purchase their shares, the Members of TDBBS,

including Chilian, voluntarily agreed, among other things, not to compete with TDBBS after the

sale:

> 6.2.1   In order to induce Purchaser to acquire the Acquired Interest pursuant to
> this Agreement, during each Restricted Party's respective Non-
> Competition Period, (i) such Restricted Party shall not, and shall cause
> their respective Affiliates and Representatives not to, directly or indirectly,
> whether as an officer, director, shareholder, member, manager, investor,
> partner, proprietor, business associate, employee, consultant,
> Representative or otherwise, in the Restricted Territory, promote, market,
> become or be financially interested in, consult with or for, or associate in a
> business relationship with, a Competitive Business or any business which
> plans to take, or is taking steps with the intention of becoming, or which is
> reasonably likely to become a Competitive Business (as defined below)
> (other than the Purchaser, the Company or their respective Affiliates).
> Notwithstanding the foregoing, this Section 6.2 shall not prohibit any
> Person from owning up to 5% of the equity of any publicly traded
> company, whether or not such company is engaged in whole, or in part, in
> a Competitive Business, provided such Person does not have a
> management position, or sit on the board of such entity. The term
> **"Competitive Business"** shall mean any existing or prospective business
> that (i) engages in the Company Business or a business that is competitive
> with the Company Business (ii) provides services and/or products similar
> to those of the Company Business and/or (iii) markets services and/or
> products similar to those of the Company Business; provided that for the
> purpose of this definition of Competitive Business, Company Business (x)
> with respect to [Chilian, among others], shall expressly exclude the
> production, distribution, and sale of pet food intended to be fed as a pet's
> sole diet[.]  The term **"Restricted Territory"** shall mean North America.

See Ex. A, §6.2.1 (emphasis in original).

21.     As regards Chilian, the term "Company Business" was defined as "the business of

formulating, developing, sourcing, manufacturing, marketing, selling or distributing natural dog

chews and treats and other similar items not intended to be fed as a dog's sole diet." See Ex. A,

§1.8.

4

22.      BRP would not have purchased the Members' interests, including Chilian's

interest, let alone agreed to pay Chilian **REDACTED**, without the benefit of the protections of

the non-competition clause. See Ex. A, §6.2.5.

23.      As regards Chilian, the Agreement specifies that the "Non-Competition Period"

runs for one year following the Closing Date, or until March 3, 2018. See Ex. A, §1.45.

24.      In the Agreement, Chilian also confirmed his obligations to protect TDBBS's

confidential and proprietary information:

> 6.2.4   Each of the Restricted Parties acknowledges that he, she or it has had
> access to, and became familiar with confidential and proprietary
> information ("**Proprietary Information**") of the Company and the
> Purchaser, and that such Proprietary Information is a valuable and unique
> asset and is and will remain the exclusive property of the Company
> following the Closing. Therefore, each of the Restricted Parties agrees and
> undertakes that he (i) will maintain securely and hold in strict confidence
> all Proprietary Information received, acquired or developed by him
> whether following or prior to the Closing, (ii) will not, in whole or in part,
> disclose Proprietary Information to any Person under any circumstances,
> and (iii) will not, in whole or in part, use any Proprietary Information for
> any purpose (other than for and as authorized in writing by the Purchaser).

See Ex. A, §6.2.4.

25.      Chilian acknowledged also and agreed further that he "received adequate

consideration in exchange for entering into the [confidentiality and non-competition] covenants,"

and that those "restrictions are reasonable and necessary to protect the legitimate interests of

Purchaser and the Company, including the goodwill the Purchaser is acquiring from the Seller

Parties hereunder, and that Purchaser would not have entered into this Agreement in the absence

of [those] covenants[.]" See Ex. A, §6.2.5.

26.      Chilian agreed further that, in the event of a breach, equitable relief was

appropriate:

> Each of the Restricted Parties expressly acknowledges that in the event of breach by any Restricted Party of this Section 6.2, damages alone will be an inadequate remedy for any breach or violation of any of the provisions of this Section 6.2, and the Purchaser, in addition to all other remedies available at law or hereunder, shall be entitled, as a matter of right, to injunctive relief, including specific performance, with respect to any such breach or violation, in any court of competent jurisdiction and to permanent injunctive relief without the necessity of proving actual damage or posting bond or other security. Any injunctive relief is in addition to, and in no way a limitation of, any and all other remedies or rights that Purchaser has at law or in equity for a breach of the covenants contained in this Section 6.2.

See Ex. A, §6.2.5.

27.     Moreover, Chilian agreed that, in the event of a breach of the restrictive covenants, the Non-Competition Period would be extended:

> [T]he running of the Non-Competition Period with respect to such Restricted Party *shall be automatically suspended* upon the date of such violation and shall resume on the date such violation ceases, and accordingly the Non-Competition Period shall be extended for a period of time equal to the period of time during which such breach shall occur; and, in the event that Purchaser should be required to seek relief from such breach in any court, board of arbitration or other tribunal, then the Non-Competition Period *shall be extended for the period of time required for the pendency of such proceedings*, including all appeals.

See Ex. A, §6.2.5 (emphasis supplied).

### Chilian is Privy to TDBBS's Most Confidential Information and Trade Secrets.

28.     In addition to being a Member of TDBBS, Chilian also served as TDBBS's Vice President of Marketing and Sales with responsibilities throughout the United States, and as one of only four members of TDBBS's Leadership Team.

29.     As Vice President of Marketing and Sales for TDBBS, Chilian reported directly to the Chief Executive Officer of TDBBS, and was responsible for creating and implementing TDBBS's overall marketing strategy, and for developing and managing TDBBS's most critical outside relationships with customers, distributors, suppliers and vendors.

30.     Prior to his involvement with TDBBS, upon information and belief, Chilian had not worked in the pet food industry, let alone within the pet chew and treat segment. Consequently, TDBBS provided Chilian with training, compensation, benefits, business contact information and other resources that allowed him to succeed and to develop and further TDBBS's business relationships, products and processes.

31.     Additionally, as an owner, officer and member of the Leadership Team, TDBBS provided Chilian with access to and entrusted him with TDBBS's confidential and proprietary information concerning such matters as:  business plans; pricing, marketing and distribution strategies; product, branding, packaging and advertising development; brand portfolio strategies; vendor selection; global supply chain; customer lists and preferences; business partner relationships and agreements; discount structures; channel development; brand launches; and personnel.

32.     Put bluntly, at all relevant times hereto, there were no other executives under the Chief Executive Officer at TDBBS who had more access to TDBBS's strategic business plans, customer relationships, business partners, and highly confidential information than Chilian.

### Chilian Violates His Duties to Plaintiffs.

33.     On April 21, 2017, Chilian gave notice that he was resigning his employment with TDBBS, effective immediately.

34.     At the time, Chilian represented to TDBBS that he was leaving because his family was relocating to New Jersey after his wife accepted a new job.

35.     Chilian represented further that he was going to take "a couple of months off" and then look for a "marketing position" in New Jersey; a marketing position *outside* of the pet chew and treat industry.

7

36.     Plaintiffs learned recently that those representations were false, and continue to be false.  In fact, upon information and belief, Chilian has been actively promoting, marketing, or otherwise providing services to a Competitive Business in violation of the Agreement since, at least, July of 2017.

37.     Specifically, despite his representations, Chilian has been working as a Marketing Executive for a direct competitor of TDBBS, Central Garden & Pet Company ("Central").

38.     Central sources, develops, manufactures, distributes, markets and sells pet products, including natural dog treats and chews, under its brands Nylabone, Four Paws, IMS and Cadet.

39.     In December of 2017, Plaintiffs learned that, in or around July of 2017, one of Chilian's former TDBBS subordinates was told by a Nylabone employee and at least one other individual working in the pet industry that Chilian had been hired to do marketing for Nylabone.

40.     When the TDBBS subordinate reached out to Chilian, she was told: "[p]lease keep it on the down low, I'm trying to keep a low profile until Global."

41.     "Global" is the Global Pet Expo that will be held in Orlando, Florida, beginning on March 23, 2018, *i.e.,* just days after the date on which Chilian's Non-Competition Period under the Agreement would have expired had he complied with his obligations.

42.     The information learned in December provided concerning context for a marketing release issued by Nylabone in October of 2017.  Specifically, on or around October 19, 2017, Nylabone issued a press release regarding a new edible dog chew line -- "Limited Ingredient" natural dog chews -- in which it described its chews as a "simpler formula," that provides a "healthy, simple, and easily digestible" solution for pet owners looking for limited ingredient pet treats and chews.

8

43.     Unbeknownst to TDBBS, Chilian was, at that time, a Marketing Executive with Central. Notably, TDBBS markets *its* "single ingredient" and "limited ingredient" natural dog chew treats using nearly identical language -- as being "simpler," "healthy" and "fully digestible."

44.     Upon information and belief, Chilian was and is continuing to be instrumental in Central's efforts to shift its marketing approach and to thereby target the natural dog chew and treat market and, therefore, TDBBS's customers.

**Chilian did not Deny His Involvement with Nylabone and Ignored TDBBS's Demands.**

45.     Shortly after learning that Chilian was providing services to Nylabone, on December 21, 2017, counsel for TDBBS sent a demand letter to Chilian. See Ex. B.

46.     In the letter to Chilian, TDBBS reminded Chilian of his non-competition and confidentiality obligations, and stated that it had reason to believe he was violating those obligations by, among other things, providing services to Nylabone. Id.

47.     TDBBS demanded that, on or before January 3, 2018, Chilian: (1) return TDBBS's Proprietary Information, as defined in the Agreement; (2) provide a description of all uses and disclosures of TDBBS's Proprietary Information by Chilian; and (3) provide assurance that he was abiding and would continue to abide by his legal obligations. Id.

48.     Also on December 21, 2017, counsel for TDBBS notified Nylabone of Chilian's contractual restrictions and obligations in the Agreement, and requested that Nylabone provide written confirmation of any steps it would take to ensure Chilian's compliance. See Ex. C.

49.     To date, neither Chilian nor Nylabone has responded to those demands, and neither has otherwise denied that Chilian is providing services to Nylabone.

9

## III.
## CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT

50.     Plaintiffs repeat, reallege and incorporate by reference each and all of the allegations contained in the preceding paragraphs as if fully stated herein.

51.     The Agreement is a binding and enforceable contract between Chilian and Plaintiffs, which contains reasonable restrictive covenants that are necessary to protect Plaintiffs' legitimate business interests.

52.     Plaintiffs have fulfilled their obligations to Chilian under the Agreement.

53.     Chilian has violated and is continuing to violate the Agreement including, without limitation, his promise not to compete with TDBBS, and to not use or disclose TDBBS's confidential and proprietary information.

54.     Plaintiffs have suffered and will continue to suffer harm as a result of Chilian's breach of the Agreement – most of which is irreparable.

55.     Chilian is therefore liable to Plaintiffs in an amount to be determined by the Court, together with costs and interest, and is subject to injunctive relief as set forth herein.

### COUNT II – UNJUST ENRICHMENT

56.     Plaintiffs repeat, reallege and incorporate by reference the allegations contained in each and all of the preceding paragraphs as if fully stated herein.

57.     Plaintiffs invested substantial resources and provided access to TDBBS's confidential and proprietary information and trade secrets to assist Chilian in attracting, servicing and developing relationships with Plaintiffs' business partners, including without limitation TDBBS's customers, distributors, vendors, and suppliers.

10

58.     Chilian encouraged Plaintiffs to invest their time and financial resources and to disclose TDBBS's confidential and proprietary information and trade secrets to him, and knowingly accepted the benefits flowing therefrom.

59.     Due to his actions, as described above, Chilian has been or will be unjustly enriched through his improper actions and conduct, including but not limited to retaining monies paid to him by Plaintiffs despite his breaching the consideration for such payment, and by the use of confidential and proprietary information and relationships created and maintained at the expense of Plaintiffs, as well as the improper targeting of existing and prospective TDBBS customers and business partners.

60.     Chilian is therefore required to make restitution to Plaintiffs for such unjust enrichment.

61.     As a direct and proximate result of Chilian's unlawful conduct, Plaintiffs have suffered and are continuing to suffer damages.

62.     As a consequence thereof, Chilian is liable to Plaintiffs in an amount to be determined by the Court, together with interest and costs, and is subject to injunctive relief as set forth herein.

## COUNT III - INJUNCTIVE RELIEF

63.     Plaintiffs repeat, reallege and incorporate by reference each and all of the allegations contained in the preceding paragraphs as if fully stated herein.

64.     Plaintiffs have demonstrated a likelihood of success on the merits of their claims.

65.     In spite of his contractual obligations, Chilian has engaged in, is engaging in and/or is preparing to engage in unlawful acts in violation of the Agreement.

11

66.     Chilian's actions threaten to deprive Plaintiffs of the benefits of the goodwill and business relationships created, maintained and developed by and at the expense of TDBBS, and to divert business away from Plaintiffs to any new employer of Chilian.

67.     Chilian's actions also threaten the disclosure of Plaintiffs' confidential and proprietary information.

68.     Unless Chilian is enjoined from the conduct described herein, Plaintiffs will continue to suffer irreparable harm, including loss of goodwill and customer, distributor, supplier and vendor relationships, loss of the confidentiality of their information, loss of trade secrets, and financial losses that at present are not calculable.

69.     The irreparable harm that Plaintiffs will suffer if injunctive relief is denied outweighs the potential harm (if any) to Chilian if injunctive relief is granted.

70.     Plaintiffs have no adequate remedy at law.

71.     The injunctive relief that Plaintiffs request against Chilian would merely require him to adhere to the Agreement.

72.     It is unjust and inequitable to permit Chilian to benefit from the deliberate disregard of his contractual and legal obligations.

73.     Indeed, Chilian recognized injunctive relief is appropriate at the time he signed the Agreement, representing specifically that, "damages alone will be an inadequate remedy for any breach or violation of any of the [restrictive covenants set forth in] Section 6.2, and the Purchaser [BRP], in addition to all other remedies available at law or hereunder, shall be entitled, as a matter of right, to injunctive relief[.]" See Ex. A, §6.2.5.

74.     As a consequence thereof, Plaintiffs are entitled to injunctive relief as set forth herein.

12

**JURY DEMAND**

Plaintiffs hereby demand a jury.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

1.  Preliminary and permanent injunctive relief, as follows:

    a.  An Order directing Defendant Chilian, his agents, representatives, servants, employees, and all those acting in concert with him, for the remainder of his Non-Competition Period as defined by the Agreement, including throughout the pendency of the proceedings in this Action, including any appeals, to comply with the terms of Section 6.2 of the Agreement and to cease and desist from, directly or indirectly:

        i.  promoting, marketing, being financially interested in, consulting with or for, or associating in any business relationship with any Competitive Business;

        ii.  soliciting Plaintiffs' employees, consultants or independent contractors to become employees, consultants or independent contractors of a Competitive Business, or otherwise encouraging any employee, consultant or independent contractor of Plaintiffs to terminate his or her relationship with Plaintiffs;

        iii.  soliciting or otherwise encouraging any customer, partner, distributor, supplier, or vendor of Plaintiffs to cease doing business with Plaintiffs, or to materially adversely change its relationship with Plaintiffs; and/or

        iv.  disclosing or using Plaintiffs' Proprietary Information as defined in the Agreement;

    b.  An Order directing Chilian, his agents, representatives, servants, employees, and all those acting in concert with him, to return immediately to Plaintiffs any and all property of Plaintiffs, including without limitation all property containing Proprietary Information as defined in the Agreement, in Chilian's possession, custody, or control; and

    c.  An Order directing Chilian, his agents, representatives, servants, employees, and all those acting in concert with him, to preserve and maintain all electronically-stored information that contains Plaintiffs' Proprietary Information as defined in the Agreement, and cease and desist

from disclosing or using in any way any such information, until directed by Plaintiffs or the Court in writing to destroy such electronically-stored information;

2.      Compensatory damages;

3.      Costs;

4.      Pre-judgment and post-judgment interest; and

5.      Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/Charles A. McCauley III*
Charles A. McCauley III (#4738)
Zarwin Baum DeVito Kaplan
Schaer Toddy, P.C.
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
(302) 299-1031 (Tel)
(302) 391-1126 (Fax)
Email: camcauley@Zarwin.com
Attorneys for Plaintiffs, BRP HOLD OX, LLC, and
TDBBS, LLC,

Dated: January 23, 2018

Of Counsel:

*Pro Hac Vice To Be Filed:*
David F. McComb
Zarwin Baum DeVito Kaplan
Schaer Toddy, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA 19103
(215) 569-2800 (Tel)
9215) 569-1606 (Fax)
Email: dfmccomb@zarwin.com

*Pro Hac Vice To Be Filed:*
Steven L. Manchel
Manchel & Brennan, PC
100 River Ridge Dr., Suite 308
Norwood, MA  02062

(617) 796-8920
(617) 796-8921 (fax)
Email:  smanchel@manchelbrennan.com

## TDBBS, LLC VERIFICATION

I, Greg Birsinger, hereby state that I have read the foregoing Verified Complaint, that I am authorized to make this Verification on behalf of Plaintiff TDBBS, LLC, and that the factual allegations contained in Paragraphs 1 - 49 of the Verified Complaint are true and based on personal knowledge or information available to me which I believe to be true to the best of my knowledge, information and belief.  This statement is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury.

Executed on January 22, 2018.

Greg Birsinger

## BRP HOLD OX, LLC VERIFICATION

    I, Michelle S. Riley, hereby state that I have read the foregoing Verified Complaint, that I am authorized to make this Verification on behalf of Plaintiff BRP Hold Ox, LLC, and that the factual allegations contained in Paragraphs 1 - 49 of the Verified Complaint are true and based on personal knowledge or information available to me which I believe to be true to the best of my knowledge, information and belief.  This statement is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury.

    Executed on January 22, 2018.

Michelle S. Riley